IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 13-cv-01256-RBJ-CBS

GARY E. MICKELSON,

    Plaintiff,

v.

J. R. PROCTOR, and
*JOHN AND JANE DOE 1-100*,

    Defendants.

## ORDER

This matter is before the Court on the December 9, 2014 Recommendation [ECF No. 30] of Magistrate Judge Craig B. Shaffer that the Court grant in part and deny in part the defendants' motion for summary judgment (as converted from their motion to dismiss) [ECF No. 21]. The Recommendation is incorporated herein by reference. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b).

## BACKGROUND

A detailed summary of the procedural and factual background of this case was provided in the Recommendation. As a brief overview, Mr. Mickelson, who appears *pro se*, claims violations of his Fourth, Fifth, Eighth, Tenth, and Fourteenth Amendment rights, alleging that he suffered from an unlawful stop and detainment, unlawful arrest, excessive force and restraint used during the arrest, a conspiracy to violate his constitutional rights, and supervisory liability

for discouraging him to seek redress. The defendants originally moved to dismiss the case claiming qualified immunity, though their motion was subsequently converted into a Rule 56 motion for summary judgment. Upon a thorough review, Judge Shaffer recommended that only the civil conspiracy claim be dismissed.

The Recommendation advised the parties that specific written objections were due within fourteen (14) days after being served with a copy of the Recommendation. The defendants filed a timely objection to the entire Recommendation excluding the recommended dismissal of the civil conspiracy claim [ECF No. 31]. The plaintiff did not file an objection. Upon de novo review, the Court finds that the motion for summary judgment should have been granted as to the claims of unlawful arrest and supervisory liability but that it was correctly denied with respect to the claims of unlawful stop and detainment and of excessive force and restraint. On clear error review, the Court affirms and adopts the dismissal of the civil conspiracy claim.

## STANDARD OF REVIEW

Following the issuance of a magistrate judge's recommendation on a dispositive matter, the district court judge must "determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). The district judge is permitted to "accept, reject, or modify the recommended disposition; receive further instruction; or return the matter to the magistrate with instructions." *Id.* "In the absence of timely objection, the district court may review a magistrate . . . [judge's] report under any standard it deems appropriate." *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) (citing *Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a

magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings.")).

Because Mr. Mickelson is appearing pro se, the Court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007). However, the Court may not act as the advocate of the *pro se* litigant, nor should it "supply additional factual allegations to round out [the *pro se* litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

## ANALYSIS

In response to the defendants' timely filed objection, the Court determines de novo whether the unlawful stop and detainment, unlawful arrest, excessive force and restraint, and supervisory liability claims warrant judgment in favor of the defendant as a matter of law. The Court will address each in turn.

### Unlawful Stop and Detainment

*Unlawful Stop*

The defendants argue that there is no genuine dispute of material fact surrounding the legality of the stop. The Court disagrees. Officer Proctor justified stopping Mr. Mickelson for failing to signal a left turn. *See* Proctor Aff. [ECF No. 28-1] ¶¶ 4–5; DUI Report [ECF No. 28-4] at 3. Mr. Mickelson has consistently maintained that he signaled his turn. The defendants now seek to undermine that testimony by claiming that Mr. Mickelson failed to *properly* signal the turn by pointing his arm at a 45 degree angle towards the left instead of extending it horizontally.

3

[ECF No. 31 at 5]. Yet Officer Proctor has consistently stated that he stopped the plaintiff for failing to signal "either mechanically or by hand" a left hand turn, not for improper signaling. [ECF No. 28-1 ¶ 4]; *see also* [ECF No. 28-4 at 3].

The defendants also state that Mr. Mickelson failed to signal for a full 100 feet before making the turn. The defendants rely quite heavily (far too heavily in this Court's opinion) on Mr. Michelson's deposition testimony in which he claims that he signaled for about a second, which at 30 miles per hour would mean that he only signaled for the final 44 feet before the turn.[1] Yet even if the Court were to give this argument more weight than it deserves, the defendants do not explain how signaling for the final 44 feet is consistent with being pulled over for *failing* to signal. The question is whether any signal was given. And there is a genuine dispute of material fact surrounding this issue. The Court therefore affirms Judge Shaffer's recommendation to deny the defendants' motion as to this claim.

*Unlawful Detainment*

The crux of the unlawful detainment claim is whether Officer Proctor had reasonable suspicion to subject Mr. Mickelson to a field sobriety test. Judge Shaffer recommended that the claim be maintained because there exists a genuine dispute of material fact surrounding whether Mr. Mickelson told Officer Proctor that he had consumed four alcoholic beverages that night, whether his eyes were bloodshot or watery, and whether he smelled of alcohol. In their objection the defendants argue that an officer has a reasonable basis for conducting a field sobriety test where these conditions are present. The defendants' reasoning, however, begs the question; they rely on their own version of the statements and observations in dispute. The Court agrees with

---

[1] Mr. Mickelson disputes this allegation. He has attested that he estimates signaling for the full 100 feet before the turn. [ECF No. 29-1 ¶ 5].

4

Judge Shaffer that there exists a genuine dispute of material fact as to whether Mr. Mickelson was lawfully detained. The recommendation is therefore adopted.

**<u>Unlawful Arrest</u>**

The question surrounding the unlawful arrest claim is whether Mr. Mickelson's performance during the field sobriety tests, viewed objectively, could establish probable cause for Officer Proctor to believe that he was driving while intoxicated. Officer Proctor administered four field sobriety tests: horizontal gaze nystagmus (following the detainee's eye movement); one leg stand; walk and turn; and counting backwards. [ECF No. 28-2 at 2]. According to the Impairment Examination Report, Mr. Mickelson only performed one test without any problems, the horizontal gaze nystagmus. He failed the one leg stand because he swayed and raised his arms; he failed the walk and turn because he removed his foot from the line, did not consistently walk heel to toe, stopped walking at one point, and raised his arms; and he failed the counting test because he counted backwards from 57 to 47 when the instructions had been to count backwards from 57 to 43.

First, there is a genuine dispute of material fact concerning whether Officer Proctor asked the plaintiff to count backwards to 47 or 43, or whether Mr. Mickelson properly heard the officer. Before the tests began, Mr. Mickelson had told the officer that he was hard of hearing. And no mistakes were noted with respect to Mr. Mickelson's counting from 57 down to 47. Viewed objectively and in the light most favorable to the plaintiff, the counting test mistake could not establish probable cause to arrest him for driving under the influence.

With that said, Mr. Mickelson has not adequately alleged a genuine dispute of material fact concerning whether he failed the final two tests, the one leg stand and the walk and turn.

5

During his deposition, Mr. Mickelson recalls being asked to walk down a white line, which he described as being "a little difficult with all the flashing lights and everything behind me, but I walked down that line." Mickelson Depo. at 39 [ECF No. 24 at 36]. He does not, however, explicitly dispute Officer Proctor's findings that he removed his foot from the line, did not consistently walk heel to toe, stopped walking at one point, and raised his arms. Then Mr. Mickelson described the counting backwards test, explaining that Officer Proctor "told me I failed the test because I didn't count backwards far enough." *Id.* at 40 [ECF No. 24 at 37]. The Court has already given Mr. Mickelson the benefit of the doubt with respect to this test. Finally, the plaintiff stated that he couldn't remember the other tests he took, but that there were probably a couple of others. *Id.* at 41 [ECF No. 24 at 38]. Mr. Mickelson never addressed the one leg stand test, though he was also never asked about it.

In his affidavit, which postdates all of the briefing on the motion to dismiss, Mr. Mickelson again fails to dispute the findings with respect to the walk and turn or the one leg stand tests. Instead, Mr. Mickelson states that he "did the tests that Officer Proctor ordered me to do and thought I did okay despite my age, the fact that I was wearing new boots which were not broken in, and was distracted and disoriented by the strobe effect of the flashing lights of the patrol car." Mickelson Aff. [ECF No. 29-1] ¶ 13. He also reiterates the discrepancy with the counting test. *Id.* ¶ 14.

The Court finds that none of these sworn statements adequately puts the findings of the field sobriety tests in dispute. While Mr. Mickelson may have thought he performed adequately and while he may have been disoriented from the light or unable to walk properly in his new boots, the question is only whether the arrest was objectively reasonable. Mr. Mickelson has not

6

alleged that he performed the tests perfectly, but instead justifies his mistakes on information that was not presented to Officer Proctor at the time. Viewing the record in the light most favorable to the plaintiff, the Court finds that there is no genuine dispute of material fact that would allow it to question the reasonableness of the arrest. The record evidence establishes that Officer Proctor had a good faith basis to believe he had probable cause to arrest Mr. Mickelson on suspicion of a DUI.[2] The defendants' motion as to this claim is therefore granted.

### Excessive Force and Restraint

Mr. Mickelson argues that Officer Proctor used excessive force when placing the handcuffs on him during arrest. He also alleges that Officer Proctor used excessive restraint by ignoring Mr. Mickelson's complaints of pain and requests to reposition the handcuffs and by keeping Mr. Mickelson in handcuffs for nearly half an hour before transporting him to the Sheriff's station.[3] In their objection, the defendants contend that "[t]here is no evidence that the trooper's actions in grabbing Plaintiff's hands in order to handcuff them 'was unreasonable in light of clearly established law.'" [ECF No. 31 at 10] (citation omitted). This recitation of the claim is oversimplified. As Judge Shaffer explains, while handcuffing in connection with an

---

[2] I pause here to note that Mr. Mickelson seems bothered by the use of the phrase "on suspicion of" as being axiomatic that no probable cause existed. *See* [ECF No. 29 at 6]. While the Court appreciates his parsing of language, it is misplaced. An officer needs probable cause to arrest a person on suspicion of <u>a chargeable offense</u>. The use of the term does not imply a lack of probable cause but instead requires that there be suspicion (or belief) that the arrestee committed <u>a crime</u>.

[3] The Court agrees with Judge Shaffer that it cannot confirm the reports on the Colorado State Patrol Incident Recall Record (the "Log"). More importantly, the Log is not dispositive to this claim. At most, the defendants hope to show that Mr. Mickelson was not handcuffed for half an hour before arriving at the Sheriff's station. However, this is only part of his claim. He also contends that the handcuffs should have been repositioned immediately when it became clear that he was in pain. Should this case go to trial and should the time line remain in dispute, the defendants are welcome to authenticate the Log and move for its admission as a business record to substantiate their version of events. However, it will not be relied upon in this Order as the reports contained within it cannot be confirmed.

arrest is not necessarily an excessive use of force, when a resulting injury is significant the courts must consider whether the arresting officer knew the handcuffs were causing an injury at the time of the arrest.

First, there is undisputed evidence of a significant injury, a partial full thickness tear of Mr. Mickelson's left supraspinatus tendon.  Second, there is conflicting evidence as to whether Mr. Mickelson complained of or showed signs of pain and whether he repeatedly requested to be handcuffed in the front of his body as a result thereof.  The Court agrees with Judge Shaffer that genuine disputes of material fact exist as to whether the tendon tear was a result of the handcuffing and as to whether Officer Proctor knew the handcuffs were contributing to or exacerbating the injury.

To the extent that the defendants claim that Officer Proctor was unaware of a preexisting condition suffered by Mr. Mickelson that was exacerbated by the handcuffing, the argument is of no consequence.  Mr. Mickelson does not claim that he suffered any preexisting condition. Instead, he alleges that when he went to put his hands behind his back he found he physiologically could not, and that in response Officer Proctor "violently jerked Plaintiff's left arm backward with sufficient force to cause" his tendon to tear.  From here the question arises whether this force, in and of itself, was excessive given that Mr. Mickelson was a nonviolent misdemeanant who was not actively resisting arrest or attempting to flee.  As Judge Shaffer explains, this question is better suited for the factfinder.  The Court affirms this portion of the recommendation.

**Supervisory Liability**

Mr. Mickelson's supervisory liability claim concerns an unnamed (John Doe 2) and non-served defendant, Captain Petrik. According to Mr. Mickelson, about a month after the incident he called the police station to lodge a complaint. He spoke to Captain Petrik, who allegedly condoned, ratified, and approved Officer Proctor's actions by failing to lodge the complaint, thereby subjecting himself to supervisory liability.

Though the defendants have not put forward this argument, the Court is bound to dismiss this claim on the grounds that Captain Petrik had no hand in the injury suffered by Mr. Mickelson. Supervisory liability under section 1983 is a form of direct liability, meaning that liability only attaches "where the plaintiff has shown the supervisor himself 'breached a duty to plaintiff which was the proximate cause of the injury.'" *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010). There is an "affirmative link" requirement between the supervisor and the violation, which has three prongs: (1) personal involvement; (2) sufficient causal connection; and (3) culpable state of mind. *See id.* Personal involvement can be shown in a number of ways, including knowledge of the violation and acquiescence *in its continuance*. *See id.* Notably, if a failure to act is alleged it must occur while the violation is ongoing; failing to act after the injury is suffered precludes a causal connection between the inaction and the alleged deprivation.

In this case, Mr. Mickelson called to complain a month after the incident but felt that Captain Petrik was uninterested in investigating the stop or in punishing his officers. Yet this alleged intractability did not cause the constitutional deprivations complained of. And insofar as Mr. Mickelson's Complaint could be read as alleging a deprivation of his First Amendment right to petition the government for a redress of grievances, Mr. Mickelson admits that Captain Petrik asked him to send in a written complaint. Mr. Mickelson chose not to because he felt that the

9

complaint would not be taken seriously or might even be used against him. However nothing in the record indicates that he was ever dissuaded from, let alone threatened or coerced against, filing a complaint. Therefore, insofar as this claim can be read into the Complaint it too must fail.

Upon a de novo review, the Court finds that there is no legal basis for Mr. Mickelson's supervisory liability claim as no causal connection has been pled. There is also no basis in the record for a separate First Amendment claim against Captain Petrik. The defendants' motion is therefore granted as to this claim.

## ORDER

Accordingly, it is ORDERED that the Recommendation of the United States Magistrate Judge [ECF No. 30] is ACCEPTED and ADOPTED IN PART. It is further ORDERED that Defendants' motion for summary judgment (originally filed as a motion to dismiss) [ECF No. 21] is GRANTED IN PART and DENIED IN PART.

DATED this 12th day of January, 2015.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge